PAUL J. FISHMAN
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

WARD W. BENSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-9642
Email: wardlow.w.benson@usdoj.com
*Counsel for the United States*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Petitioner, )<br>  )<br>v.  )<br>  )<br>ELI CHABOT and )<br>RENEE CHABOT, )<br>  )<br>Respondents. ) | Case No. 14-cv-03055 |

**REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO REOPEN AND FOR CONTEMPT AND IN OPPOSITION TO THE CHABOTS' CROSS-MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

The United States' motion to reopen and for an order holding the Chabots in contempt should be granted, and the Chabots' cross-motion to compel the production of documents should be denied. This courts' prior order enforcing the summons is res judicata as to all defenses that could have been raised at the enforcement stage. The Chabots have therefore waived any defense that they never possessed, and were never required to possess, any records required to be kept pursuant to the Bank Secrecy Act and related regulations. While they may raise the defense

1

of *present* inability to comply, they bear the burden of production and have not presented any admissible evidence in support of that defense.  And, since they waived the argument that they were not were not required to maintain any bank records, the documents they seek from the United States are irrelevant to any defense they can now raise.  An order holding them in contempt is therefore appropriate and necessary, and the motion to compel should be denied.

## Factual Background

This action began with a petition to enforce IRS summonses against respondents Eli and Renee Chabot.  The scope of the summonses had been limited by agreement to only request records required to be held pursuant to the Bank Secrecy Act of 1970 and a related regulation, 31 C.F.R. § 1010.420.  That section applies to any "person having a financial interest in or signature or other authority over any" foreign financial account.  *Id.*

The term "financial interest" encompasses a wide variety of relationships a person may have to a foreign financial account.  The most obvious interest is when the person "is the owner of record or has legal title."  A person also has a financial interest in a foreign financial account if he or she "owns directly or indirectly more than 50 percent of the voting power or the total value of the shares" of a corporation that is the owner of record or has legal title to the account.

"[S]ignature or other authority" is broader than respondents' counsel implies by his repeated use of the phrase "signature authority."  The term "means the authority of an individual (alone or in conjunction with another) to control the disposition of money, funds or other assets held in a financial account by direct communication (whether in writing or otherwise) to the person with whom the financial account is maintained." 31 C.R.F. § 1010.350(f)(1). Formal signature authority, as might be required to control the disposition of the typical domestic bank deposit account, is not required.

The Chabots themselves have never denied in this Court that they have a financial interest in or signature or other authority over a foreign financial account. At the enforcement stage of this proceeding, their only defense was the assertion of the Fifth Amendment privilege against self-incrimination. Both this Court and the Third Circuit Court of Appeals ruled that the documents sought in the summonses fell within the Required Records Exception to that privilege, and the privilege was thus unavailable to them.

The Chabots have chosen, instead, to make their denials through counsel. Their attorney has sent several letters to the IRS and to the Department of Justice claiming that the Chabots are not subject to the above-cited regulations. The Chabots, however, have never attested, orally or in writing, under penalty of perjury, that during the relevant periods they did not have a financial interest in or signature or other authority over a foreign financial account and thus were not required to maintain records by 31 C.F.R. 1010.420. Even at this stage, they have not submitted an affidavit to that effect nor have they offered to testify on the topic. All that is offered in opposition to the present motion is Mr. Levine's brief and declaration and neither contains any explanation for how Mr. Levine has personal knowledge of the Chabot's full financial affairs.

## Legal Argument

### I. Respondents Have Failed to Comply with the Summonses

The Chabots' continued failure to produce requested documents constitutes a failure to comply with the summonses. Because they did not deny their possession or control over the records at the enforcement stage, the Chabots are precluded from relitigating that issue now. They are now presumed to have possessed the records when the order enforcing the summons was entered. And, while they can now assert a *present inability* to produce the records, they

have not made any attempt to meet their burden of production on that defense. They therefore should be found in contempt of the order.

The Chabots are precluded from raising for the first time before this Court that they never possessed and were never required to possess the records sought by the summonses. "Principles of res judicata … preclude re-examination of the validity of underlying orders in contempt proceedings." *U.S. v. Millstone Enterps., Inc.*, 864 F.2d 21, 23 (3d Cir. 1988). *Accord*, *Maggio v. Zeitz*, 333 U.S. 56, 68-69 (1948). As put by the Supreme Court,

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

*Maggio*, 330 U.S. at 69. It is based on this logic that the Supreme Court set forth the proposition, cited in the United States' initial brief, that

> [b]ecause a proceeding to enforce an IRS summons is an adversary proceeding in which the defendant may contest the summons "on any appropriate ground," and because lack of possession or control of records is surely such a ground, the issue may not be raised for the first time in a contempt proceeding.

*U.S. v. Rylander*, 460 U.S. 752, 757 (1983).[1] They thus cannot argue that they are complying with the summonses by telling the IRS they never had or were required to have the requested records. Those defenses have been foreclosed by their failure to raise them earlier, and so there is no option other than to consider them in violation of the order enforcing the summonses.

---

[1] Respondents' argument that this language is *dicta* is unavailing. Though not the express holding of *Rylander*, this proposition was central to the court's analysis and was the logical extension of its *Maggio* decision to the facts of the case before it.

Common sense also militates against taking this defense seriously. The Chabots fought all the way to the Supreme Court in a vain attempt to assert the Fifth Amendment privilege to avoid complying with the subpoenas. If they really never were required to maintain the requested records, it would have been much easier, cheaper, and less time consuming for them, the United States, and every court involved for them to raise that defense in the original proceeding. It would also have been far more logical and effective, since credible testimony on that defense would almost certainly have resulted in denial of enforcement, whereas the Fifth Amendment defense had already been rejected by every appellate court to hear it. Their argument that they needed to raise it in order to preserve the issue for appeal is nonsensical. Again, if they really never were required to maintain the records, the only reasonable approach at the time of the enforcement proceeding would be to raise that most obvious of defenses. Given the facial implausibility of their explanation for their legal strategy, this defense of original nonpossession should not be entertained.

There is one defense remaining to the Chabots, but they have expressly declined to make it. While they are precluded from making their present argument that they never had any of the required records, they are allowed to claim that they had them at the time of the petition but now no longer possess them. *Rylander*, 460 U.S. at 757, 760-761 (citing *Maggio*, 333 U.S. at 75-76). They continue, though, to insist on making precisely the argument that *Rylander* and *Maggio* state are foreclosed–that they never had the records at the time of the enforcement proceeding.

Even if they were arguing a present inability to produce, they have not made the proper evidentiary showing to support that defense. The enforcement order creates a presumption of continuing possession, and they have the burden to produce evidence showing why they no longer have the requested records. *Rylander*, 460 U.S. at 757, 760-761 (citing, *inter alia*,

5

*Maggio*, 333 U.S. at 75-76).  They have not offered any competent evidence in support of this contention.

All that has been submitted so far are statements from Mr. Levine in his brief and exhibits.  These are mostly unsworn, and he has offered no explanation for why he has personal knowledge of all of the Chabots' financial affairs.  The Chabots themselves have never been willing to testify under oath regarding their interest in or control over foreign financial accounts and still at this stage they declined even to submit affidavits attesting to their lack of possession.  That silence is deafening, and it constitutes a complete failure to meet their burden on any possible defense of nonpossession.

**II.     The Respondents Are Not Entitled to Any Documents from the United States**

The respondents' cross-motion should be denied.  They long ago waived the defense that they did not have the requisite connection to a foreign financial account to be subject to 31 C.F.R. § 1010.420.  While they can raise their *present* inability to produce the records as a defense, the documents they requested from the United States are not necessary for that purpose.  Since the documents are therefore irrelevant to any defense still available to the Chabots, they have no need for them.

Ordering the United States to produce the documents demanded by the Chabots would also be contrary to the procedural and evidentiary rules governing summons enforcement proceedings.  As stated before, a taxpayer challenging a summons bears the burden of demonstrating that it lacks the records sought by the IRS.  Here, the Chabots are demanding that the United States produce documents showing the Chabots have an interest in or authority over a foreign financial account without them first submitting evidence that they have no such interest

or authority. In doing so, the Chabots seek to completely invert the established rules regarding evidentiary burdens in this type of proceeding.

These rules are not arbitrary and must be enforced to effectuate Congress's goals in authorizing the administrative summons process. An action to enforce a summons is not a prosecution for a violation of the law. It is investigative tool that allows the government to seek information not in its possession which may be relevant to a legitimate investigation. The process is similar to a grand jury, "'which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *U.S. v. Powell*, 379U.S. 48, 57 (1964). It is thus entirely reasonable for the government to seek records without absolutely knowing that they exist or what their contents are. This is why the Supreme Court has expressly refused to apply a high standard such as probable cause for determining whether a summons should be enforced. *Id*. This Court should not defeat the well-established purpose of the summons process by effectively turning it into an affirmative suit to prosecute for failure to maintain required records and thereby shifting the evidentiary burden to the government. Doing so would largely eliminate the usefulness of the summons as a tool for investigating tax evasion.

WHEREFORE petitioner the United States of America respectfully requests that this court: (1) reopen this case and order respondents Eli Chabot and Renee Chabot to show cause why the Court should not hold them in contempt of its prior order; and (2) deny the respondents' cross-motion to compel the production of documents.

Date:  February 29, 2016	Respectfully submitted,

	CAROLINE D. CIRAOLO
	Acting Deputy Assistant Attorney General

	<u>/s/ Ward W. Benson</u>
	WARD W. BENSON
	Trial Attorney, Tax Division
	U.S. Department of Justice
	Post Office Box 227
	Ben Franklin Station
	Washington, D.C. 20044
	Telephone: 202-514-9642
	Email: wardlow.w.benson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that the foregoing REPLY MEMORANDUM was filed with the clerk of the court on February 29, 2016, using the CM/ECF system, which will send notification of such filing to all parties appearing in said system.

/s/ Ward Benson
WARD BENSON